IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 3, 2000

## STATE OF TENNESSEE v. MICHAEL S. JACKSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 97-03136     Joseph B. Brown, Jr., Judge**

_____

**No. W1999-00358-CCA-R3-CD - Filed November 9, 2000**

_____

The defendant was convicted of aggravated robbery and sentenced to twelve years confinement as a standard, Range I offender. On appeal, the defendant argues that the evidence was insufficient to support the jury's verdict, and that the trial court erred in its application of sentencing enhancement factors. Based upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, J.J., joined.

A C Wharton, Jr., Shelby County Public Defender; Tony N. Brayton, Assistant Public Defender (on appeal); Amy Mayne, Assistant Public Defender (at trial); and Robert C. Felkner, Assistant Public Defender (at trial), for the appellant, Michael S. Jackson.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; Patience R. Branham, Assistant District Attorney General; and Scott D. Gordon, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant was convicted by a jury of aggravated robbery, a Class B felony. Finding three enhancement factors applicable, and no relevant mitigating factors, the trial court sentenced the defendant to twelve years confinement as a standard, Range I offender. Following the denial of his motion for a new trial, the defendant filed a timely appeal to this court, presenting the following issues for review:

> I.      Whether the evidence was sufficient to support the jury's
> verdict; and

II.      Whether the trial court erred in applying enhancement factors to increase the defendant's sentence from the presumptive minimum sentence of eight years to the maximum sentence of twelve years.

After reviewing the record, we conclude that the jury's verdict was supported by the evidence, and that the trial court committed no error in sentencing. Accordingly, we affirm the judgment of conviction and the sentencing imposed.

## FACTS

The facts in this case are undisputed. On the evening of October 27, 1996, the defendant, seventeen-year-old Michael S. Jackson, along with an accomplice, robbed Mrs. Irma McNeary at gunpoint at her home in Memphis, Tennessee. At approximately 7:00 p.m., the defendant, carrying a jacket, walked up to the victim's front door and rang the bell. The victim and her mother were home alone. When the victim answered the door, the defendant told her that he was returning a jacket that her son had left in his car. Recognizing the defendant as the son of a woman who attended her church, the victim opened the door. At that point, the defendant showed the victim a pistol that he held under the jacket, and told her to "get back in the house." The victim retreated into the house, followed by the defendant. Once inside, the defendant motioned for his accomplice, Mario Ward, waiting in a car parked outside on the street, to join him.

When both men were inside the house, the defendant demanded a set of gold tire rims which he claimed that the victim's son had taken from him. After the defendant threatened to shoot the women if they did not comply, the victim led the men to the backyard, where she unlocked the shed in which the rims were stored. Handing the gun to Ward to hold on the victim, the defendant retrieved the rims from the shed and placed them in the trunk of Ward's car. The men then drove away.

The defendant was arrested on October 30, 1996, and taken to the Shelby County Juvenile Court. On November 1, 1996, the defendant confessed to the robbery in an interview conducted by Sergeant Gerold Blum of the Memphis Police Department. The defendant said that during the commission of the robbery, the victim called him by name and told him that she planned to telephone his mother after he left. He stated that "when she called my name I knew she knew me so I just said 'sorry', but it was already to [sic] late to stop."

The defendant later filed a motion to suppress this confession. At the hearing on the defendant's motion, Sergeant Blum testified that the defendant's mother was present during his interview with the defendant, that he read and explained the defendant's rights to the defendant and his mother before the defendant made his statement, that the defendant indicated he understood his rights but nonetheless wished to make a statement, that the defendant read and initialed a preprinted statement form containing a waiver of rights, and that neither the defendant nor his mother expressed any desire for an attorney.

The defendant testified that he had a ninth grade education, and said that he and his mother could read. He had not been handcuffed during the approximately hour long interview. He had not asked for a lawyer, although he had told his mother that it would be best if they had one. When asked if he had been pressured, coerced, or threatened to make his statement, the defendant answered: "I wasn't threatened at all. I do remember I wasn't threatened. I just know I was sad." The defendant indicated that this sadness was caused by his mother's tears:

> I felt like I was under pressure by my mother. She was crying and stuff. I didn't–I didn't know, because when I first came in, she was crying. I didn't know what he had told her or what was on her mind. So I was just–I really–I really just can't say. I don't–I know I was under a lot of pressure. I just. . . .

At the conclusion of the hearing, the trial court denied the defendant's motion to suppress, finding that the defendant's sole reason for claiming that his confession was involuntary, his feeling of sadness because his mother was crying, was "a personal problem," and insufficient to show that his confession had not been freely, voluntarily, and knowingly made.

The defendant was subsequently tried as an adult. The victim and Sergeant Blum were the only witnesses for the State at trial. The victim said that she had recognized the defendant because she had known him "from a small child growing up." She testified that, after the defendant had forced his way into her home with the pistol and beckoned his accomplice inside, he began "waving the gun around" and said that he would shoot her and her mother if he did not get what he wanted. She said that "after he had the pistol and he was pointing the pistol, I rather for them to took the rims, tires, or whatever. And so I gave them to him and he left."

Sergeant Blum testified that the defendant's mother was present during his entire interview with the defendant, which was conducted in an interview room at Juvenile Court, and took exactly forty-two minutes. He stated that he read the defendant his rights before he began the interview, and that the defendant indicated he understood his rights and wished to make a statement. Neither the defendant nor his mother, at any time either prior to or during the interview, requested an attorney. Blum said that the defendant's statement consisted of Blum's questions and the defendant's answers, which Blum wrote down, as the interview progressed. At the conclusion of the interview, he asked both the defendant and his mother to read the four-page statement, make any necessary changes, and initial the first three pages and sign the final page. This four-page statement, initialed and signed by the defendant and his mother, was introduced into evidence.

Blum stated that he had made no promises or threats to induce the defendant to confess, and that, to the best of his knowledge, the statement was freely and voluntarily given.

On cross-examination, Blum testified that it was standard practice to conduct interviews of juveniles at Juvenile Court. He said that it was his usual practice to write down a suspect's

statement, as the suspect gave it during the interview, rather than to require the suspect to write his statement down himself.

After deliberation, the jury convicted the defendant of aggravated robbery, a Class B felony. At sentencing, the trial court classified the defendant as a standard, Range I offender, because his prior "many, many convictions" had occurred while he was a juvenile. The trial court found three enhancement factors applicable: (1) the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (2) the defendant was a leader in the commission of an offense involving two or more criminal actors; and (8) the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(1), (2), and (8) (1997). Finding no relevant mitigating factors, and applying the three enhancement factors, the trial court sentenced the defendant to twelve years confinement, the maximum sentence allowed for a standard, Range I offender convicted of a Class B felony.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant first argues that the evidence, consisting of the victim's testimony and his confession, was insufficient to support the jury's verdict. The defendant implies that his confession, handwritten by Sergeant Blum and made without benefit of counsel, was not voluntary. Although the defendant's argument on this issue is not clear, he seems to suggest that, had the trial court not allowed his confession to be admitted at trial, the victim's testimony alone would have been insufficient to support the jury's finding that he was guilty of aggravated robbery beyond a reasonable doubt.

When a defendant raises an issue regarding the sufficiency of the evidence, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). See also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App.), perm. app. denied (Tenn. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. app. denied (Tenn. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of

demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

We first address the defendant's suggestion that his confession was erroneously admitted into evidence at trial. A trial court's findings of fact in a suppression hearing are conclusive on appeal unless the evidence preponderates otherwise. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). In order to be admissible at trial, a confession must have been freely given by a defendant knowledgeable of his constitutional rights, and accompanied by a knowing and valid waiver of those rights. Stephenson, 878 S.W.2d at 544-45. Statements that arise from a custodial interrogation may not be used by the prosecution at trial "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966); State v. Crump, 834 S.W.2d 265, 268 (Tenn. 1992).

At the conclusion of the suppression hearing, the trial court denied the defendant's motion to suppress his confession, finding that the defendant's statement had been knowingly and voluntarily given. The evidence presented at the suppression hearing supports this finding. According to Sergeant Blum, the defendant was read his rights before the interview began, and indicated that he understood those rights and wished to make a statement. Both Sergeant Blum and the defendant stated that the interview lasted less than one hour, and that the defendant's mother was present the entire time. The defendant acknowledged that no one told him what to say, and that his statement was not coerced by any police officers or officials. As the trial court observed, the defendant's only basis for arguing that his statement was involuntary was the sadness he felt because his mother was crying. That the defendant felt "pressured" by his mother's tears, however, is not sufficient to show that his confession was involuntary. See State v. Perry, 13 S.W.3d 724, 738 (Tenn. Crim. App.), perm. app. denied (Tenn. 1999) (stating that in determination of voluntariness of confession, "overriding question" is "whether the behavior of law enforcement officials served to overbear the defendant's will to resist").

After hearing the evidence presented at trial, including the defendant's confession and the victim's testimony, the jury found the defendant guilty of aggravated robbery. Robbery is defined in Tennessee Code Annotated Section 39-13-401(a) as the intentional or knowing theft of property from the person of another by violence or putting the person in fear. Aggravated robbery is robbery:

(1)     Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or

(2)     Where the victim suffers serious bodily injury.

Tenn. Code Ann. § 39-13-402(a) (1997).

Viewed in the light most favorable to the State, the victim's testimony establishes that the defendant forced his way into the victim's house at gunpoint, that he threatened to shoot the victim and her mother if she did not give him her son's set of gold tire rims, and that he left only after she unlocked the shed, allowing him to take the rims that he wanted. The defendant's confession, in which he admitted that he had taken the tire rims from the victim at gunpoint, corroborates the victim's account. We conclude, therefore, that the evidence presented at trial was sufficient for a rational trier of fact to find the defendant guilty of aggravated robbery beyond a reasonable doubt.

## II. Application of Enhancement Factors

The defendant next argues that the record does not support the trial court's application of enhancement factors (1), (2), and (8). He asks that this court reduce his sentence from the maximum of twelve years, imposed by the trial court, to the presumptive minimum sentence of eight years.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. Sentencing Commission Cmts. to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169. Since the record in this case indicates that the trial court followed the appropriate steps in sentencing, we review this issue *de novo*, giving the presumption of correctness to the trial court's sentencing determinations.

The defendant first argues that the trial court erred in applying enhancement factor (1), "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range[.]" Tenn. Code Ann. § 40-35-114(1) (1997). He asserts that, for sentencing enhancement purposes, a court may not consider acts committed as a juvenile unless the offenses upon which the adjudications of delinquency were based were ones which would have constituted felonies if committed by an adult. We agree. However, the defendant is not helped by the fact that the trial court relied upon factor (1) rather than factor (20) in considering the defendant's horrendous criminal record. It appears that, as a juvenile, the defendant had at least twenty-two arrests, beginning the day before his tenth birthday when he was still nine years old, when he was charged with receiving and concealing stolen property. His first six arrests were "adjusted nonjudicially." Apparently, his first confinement occurred when he had just turned fourteen and had committed his seventh offense, this one being for theft of a vehicle. He was placed on probation for this offense. Obviously, he learned little from his period of probation, as evidenced by the fact that he was arrested and processed through Juvenile Court fifteen more times over the next two years, until he turned eighteen. Two of these arrests and convictions, for theft of property valued between $1,000 and $10,000 and for aggravated burglary, would have been considered felonies, if committed as an adult, and therefore were enhancement factors pursuant to Tennessee

Code Annotated Section 40-35-114(20). Thus, we conclude that the trial court improperly applied factor (1), but it is clear that factor (20) applies as an enhancement factor.

The defendant also argues that the trial court erred in applying enhancement factor (2), "[t]he defendant was a leader in the commission of an offense involving two (2) or more criminal actors[.]" Tenn. Code Ann. § 40-35-114(2). The defendant contends that no evidence was presented at trial to show that the defendant's accomplice acted under his direction or influence. We disagree. Both the victim's and the defendant's accounts of the robbery reveal that the defendant was the clear leader in this offense. When asked to describe how the robbery "went down," the defendant stated:

> I had the pistol under the jacket and when the lady came to the door and she looked at the coat I showed her the gun and told her to get back in the house. I then waved for Mario to come in with me. We got inside and I told her to give us the rims. She took us to the shed in the back yard, unlocked it. I gave the gun to Mario to hold on the lady and I carried the rims to Mario's car, it was parked in the front of the house.

The record supports the trial court's application of sentencing enhancement factor (2).

Finally, the defendant argues that the trial court erred in applying enhancement factor (8), "[t]he defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community[.]" Tenn. Code Ann. § 40-35-114(8). The defendant acknowledges that his juvenile record contains two violations of probation offenses, but, relying once more on the language of factor (20), asserts that the trial court may not base its application of factor (8) on these probation violations because "only adjudications of delinquency which would have constituted a felony when committed as an adult may be considered in enhancing a sentence." We disagree with the defendant's argument in this regard. The trial court's application of factor (8) is supported by the record.

## CONCLUSION

We conclude that the evidence was sufficient as a matter of law to convict the defendant of aggravated robbery, and that the trial court committed no error in sentencing. We, therefore, affirm the judgment of conviction and the sentencing imposed.

_____
ALAN E. GLENN, JUDGE