IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 14, 2004 Session

## STATE OF TENNESSEE v. JIMMY ALBERT WARREN

**Interlocutory Appeal from the Circuit Court for Tipton County**
**No. 4697    Joseph H. Walker, Judge**

---

**No. W2004-00107-CCA-R9-CD  - Filed December 15, 2004**

---

The defendant, Jimmy Albert Warren, indicted for second offense driving under the influence and DUI per se, filed a pre-trial motion to suppress all evidence. The trial court granted the motion in part and denied it in part, holding that the field sobriety tests and the statements made by the defendant prior to his arrest were admissible, but that the blood alcohol content test results were not. In this interlocutory appeal initiated by the state, each party claims that the trial court erred. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 9; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Paul G. Summers, Attorney General & Reporter; Rachel E. Willis, Assistant Attorney General; and Walt Freeland and Colin Campbell, Assistant District Attorneys General, for the appellant, State of Tennessee.

Kim E. Linville, Covington, Tennessee, for the appellee, Jimmy Albert Warren.

**OPINION**

As the result of a February 10, 2003, automobile accident, the defendant was charged with driving under the influence, second offense, and DUI per se. See Tenn. Code Ann. § 55-10-401(a)(1) – (2). Prior to trial, the defendant moved to dismiss the charges on the ground that his warrantless arrest was illegal. See Tenn. Code Ann. § 40-7-103 (governing warrantless arrests by police officers). He also contended that his pre-arrest statements and performance on field sobriety tests should be suppressed because he was seized and detained in violation of the state and federal constitutions.

At the hearing on the defendant's motion, Tipton County Sheriff's Deputy Michael Downing testified that at approximately 11:00 p.m. on February 10, 2003, he was dispatched to a single-

vehicle accident at the intersection of Quito-Drummonds Road and Quito Memorial Road in Millington. When he arrived, he observed that a pick-up truck, which was registered to the defendant, "had rolled off a steep shoulder of the road." A tow truck was already present. Because the defendant, whose residence was approximately 200 yards away, was not at the scene, Officer Downing asked a relative of the defendant to return him to the scene to help complete the accident report. When the defendant arrived and acknowledged that he had been driving the truck at the time of the accident, Deputy Downing noticed the smell of alcohol and administered two field sobriety tests: the finger-to-nose and counting backwards tests. The defendant performed poorly and was taken into custody. According to the officer, there were no alcoholic beverages in the truck and the defendant denied having consumed any alcoholic beverages at his residence after the accident. A blood test indicated a blood alcohol content of .23. During cross-examination, the deputy acknowledged that he had failed to advise the defendant of his Miranda rights at any time during the evening.

Scott Warren, the defendant's nephew, testified that sometime between 9:30 and 10:00 p.m. that evening, his father telephoned, telling him that the defendant had been involved in an accident "at the end of the driveway." He recalled that he drove the defendant, who claimed to be experiencing pain related to an earlier hernia surgery, the two hundred yards to his residence. Warren estimated that an hour and a half had passed before Deputy Downing arrived on the scene. According to Warren, the deputy then said, "I need to talk to him. Can you go get him? Or I can go up there." It was his opinion that the defendant was not impaired either immediately after the accident or at the time he returned to the scene.

The trial court granted the defendant's motion to exclude the results of the blood alcohol test but ordered that the defendant's pre-arrest statements and the field sobriety tests were admissible. The order provided, in part, as follows:

> The [c]ourt finds that [State v. Thad Thomas Folds, No. 01C01-9308-CC-00278 (Tenn. Crim. App., at Nashville, Mar. 3, 1995)] is controlling of the issues herein with regard to the blood test. The defendant was at his home for some time before the officer arrived at the scene and requested that a family member request that the defendant return to the scene. The family member went to the home and the defendant voluntarily returned to the scene and attempted to perform field sobriety tests. He was then arrested. That arrest violates the provisions of T.C.A. 40-7-103.
> The motion is granted with regard to the result of the blood alcohol test which was taken after the defendant's arrest, and for any statement of the defendant after the arrest.

Initially, the state asserts that the trial court erred by suppressing the defendant's blood alcohol content, claiming that because the defendant was arrested at the scene of the accident, a warrant was not necessary. The standard of review applicable to suppression issues is well established. When the trial court makes a finding of facts at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn.

1994).  The trial court's findings are binding upon this court unless the evidence in the record preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); see also Stephenson, 878 S.W.2d at 544; State v. Goforth, 678 S.W.2d 477, 479 (Tenn. Crim. App. 1984).  Questions of credibility of witnesses, the weight and value of the evidence and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence. Odom, 928 S.W.2d at 23.

Generally, a warrantless arrest for a misdemeanor not committed in an officer's presence violates Tennessee law.  State v. Duer, 616 S.W.2d 614, 615 (Tenn. Crim. App. 1981).  Tennessee Code Annotated section 40-7-103, however, which governs warrantless arrests by police officers, provides in pertinent part as follows:

> An officer may, without a warrant, arrest a person:
> *     *     *
> At the scene of a traffic accident who is the driver of a vehicle involved in such accident when, based on personal investigation, the officer has probable cause to believe that such person has committed an offense under the provisions of title 55, chapters 8 and 10.  The provisions of this subdivision shall not apply to traffic accidents in which no personal injury occurs or property damage is less than one thousand dollars ($1,000) unless the officer has probable cause to believe that the driver of such vehicle has committed an offense under § 55-10-401[.]

Tenn. Code Ann. § 40-7-103(a)(6); see also Tenn. Code Ann. § 40-7-103(a)(8) (allowing warrantless arrest of driver involved in traffic accident "up to four (4) hours after such driver has been transported to a health care facility, if emergency medical treatment . . . is required" and officer has probable cause to believe that driver has violated Code section 55-10-401).

In State v. Thad Thomas Folds, the opinion relied upon by the trial court, police had found no one at the scene of a single-vehicle accident.  After determining that Folds was the owner of the wrecked vehicle, one of the officers drove to his residence, arriving approximately forty-five minutes after the accident.  Folds explained that he and his wife were attempting to locate a towing service. While Folds claimed that the officer required him to return to the accident scene, the officer testified that he had merely "requested" his accompaniment. After returning to the scene, Folds, who smelled of alcohol, admitted that he had been drinking and had failed two field sobriety tests.  He was arrested and agreed to a blood alcohol test.  The trial court in Folds granted Folds's motion to suppress both his statement to police and the results of his blood alcohol test, holding that the arrest was not permitted by Tennessee Code Annotated section 40-7-103(a)(6).  On appeal, this court agreed that the "scene of the accident," as used in the statute, "does not include [the] situation in which . . . the driver was required to return [to the scene] by law enforcement."  Slip op. at 8.

In State v. Jashua Shannon Sides, No. E2000-01422-CCA-R3-CD (Tenn. Crim. App., at Knoxville, May 16, 2001), the trial court found that Sides, who was charged with driving under the influence and leaving the scene of an accident, had been unlawfully arrested and granted the defense motion to suppress. At the hearing, the arresting officer testified that he was dispatched to a single-vehicle automobile accident. The driver of the vehicle was not at the scene. The officer recognized the vehicle as belonging to Sides and later saw Sides's wife drive by the accident scene in her vehicle. Sides was a passenger in her car. When the officer stopped the vehicle, Sides initially denied involvement in the accident. Eventually, he admitted that he was the driver. The trial court concluded that because Sides voluntarily returned to the scene with his wife, Tennessee Code Annotated section 40-7-103(a)(6) was inapplicable. On appeal, a majority of this court accepted the state's concession that Sides's warrantless arrest for leaving the scene of an accident was not permitted by the statute and concluded that the officer did not have probable cause to arrest for driving under the influence. Cf. State v. Reynaldo Quintanilla, No. M2002-02440-CCA-R3-CD (Tenn. Crim. App., at Nashville, May 16, 2003) (holding that although warrantless arrest for DUI would not have been permissible under rationale of Folds and Sides where defendant was found walking along public roadway in intoxicated condition and returned to accident scene by police, which was a relatively short distance away; the arrest was nevertheless lawful where officers had probable cause to believe that the defendant was committing the offense of public intoxication, see Tenn. Code Ann. § 40-7-103(1)).

In our view, the holdings in Folds and Sides are controlling precedent. Like Folds, the defendant had returned to his residence after the accident. He had been there for over one and one-half hours before Deputy Downing arrived, asking that he return to the scene. As in Folds, the defendant was not "[a]t the scene of a traffic accident" within the meaning of Tennessee Code Annotated section 40-7-103(a)(6). Although the state attempts to distinguish Folds by arguing that this defendant returned to the scene voluntarily, we do not find this determinative. In Folds, this court ruled that the case turned on the basic rationale of section 40-7-103(a)(6):

> These same policy considerations do not exist at times remote from the actual occurrence. Appellee was not at the scene when the police arrived. He presented no danger to the safety of the motoring public. Approximately an hour had passed. The results of a blood alcohol test could not accurately reflect the level that existed at the time he drove off the road. The purposes for the statutory exception were no longer served by an immediate, warrantless arrest.

Folds, slip op. at 8-9. There was a persuasive dissenting opinion in Sides criticizing the holding in Folds. See Sides, slip op. at 2-3 (Smith, J., dissenting). Nevertheless, the defendant's wrongful warrantless arrest requires exclusion of the blood alcohol test results.

Next, the defendant, arguing that he did not receive Miranda warnings, asserts that the trial court erred by failing to exclude his pre-arrest statements to police and his performance on the field sobriety tests. In denying the motion to suppress, the trial court made the following observations:

-4-

After the defendant returned to the scene, the officer could smell the odor of alcohol on the defendant. This was sufficient to establish the right of the officer to briefly question the defendant and administer field sobriety tests [or] otherwise ascertain the defendant's state of sobriety.

There is no requirement of a <u>Miranda</u> warning before requesting a field sobriety test or speaking to someone suspected of driving under the influence. The U.S. Supreme Court has held that questioning pursuant to a routine traffic stop does not implicate the protections required by <u>Miranda</u>. . . . In such a situation, an officer is permitted to "ask a detainee a moderate number of questions to establish his identity and try to obtain information confirming or dispelling the officer's suspicions." . . . .

[I]n the case at bar, the [d]efendant's statement about drinking was not made while he was in custody. In fact, no traffic stop was initiated, the defendant had returned to the scene with his nephew.

The length of time between the accident and the field sobriety test, and other factors such as injury to the defendant, go to the weight to be given to the tests, not the admissibility.

The Fifth Amendment to the United States Constitution provides that "no person . . . shall be compelled in any criminal case to be a witness against himself ." U.S. Const. amend. V; <u>see also</u> <u>Malloy v. Hogan</u>, 378 U.S. 1, 6 (1964) (holding that the Fifth Amendment protection against compulsory self-incrimination is applicable to the states through the Fourteenth Amendment). Article I, section 9 of the Tennessee Constitution provides that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. "The significant difference between these two provisions is that the test of voluntariness for confessions under Article I, § 9 is broader and more protective of individual rights than the test of voluntariness under the Fifth Amendment." <u>State v. Crump</u>, 834 S.W.2d 265, 268 (Tenn. 1992).

Generally, one must affirmatively invoke these constitutional protections. An exception arises, however, when a government agent makes a custodial interrogation. Statements made during the course of a custodial police interrogation are inadmissible at trial unless the state establishes that the defendant was advised of his right to remain silent and his right to counsel and that the defendant then waived those rights. <u>Miranda v. Arizona</u>, 384 U.S. 436, 471-75 (1966); <u>see also</u> <u>Dickerson v. United States</u>, 530 U.S. 428, 444 (2000); <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994). A defendant's rights to counsel and against self-incrimination may be waived as long as the waiver is made voluntarily, knowingly, and intelligently. <u>Miranda</u>, 384 U.S. at 478; <u>State v. Middlebrooks</u>, 840 S.W.2d 317, 326 (Tenn. 1992). In order to effect a waiver, the accused must be adequately apprised of his right to remain silent and the consequence of deciding to abandon the right. <u>Stephenson</u>, 878 S.W.2d at 544-45. In determining whether a confession was voluntary and knowing, the totality of the circumstances must be examined. <u>State v. Bush</u>, 942 S.W.2d 489, 500 (Tenn. 1997). If the "greater weight" of the evidence supports the court's ruling, it will be upheld.

Id. This court must conduct a de novo review of the trial court's application of law to fact. State v. Bridges, 963 S.W.2d 487 (Tenn. 1997); State v. Yeargan, 958 S.W.2d 626 (Tenn. 1997).

In Miranda, the United States Supreme Court limited its holding to a "custodial interrogation." Miranda, 384 U.S. at 478-79. The Court defined the phrase "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444. A person is "in custody" within the meaning of Miranda if there has been "a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121,1125 (1983) (citation omitted). The Court has refused to extend the holding in Miranda to non-custodial interrogations. See Oregon v. Mathiason, 429 U.S. 492 (1977) (holding that an accused's confession was admissible because there was no indication that the questioning took place in a context where his freedom to depart was restricted in any way); see also Beheler, 463 U.S. at 1124-25 (noting that the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest). In determining whether a reasonable person would consider himself or herself in custody, our supreme court considers a variety of factors, including the following:

> [T]he time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.

State v. Walton, 41 S.W.3d 75, 82-83 (Tenn. 2001) (quoting State v. Anderson, 937 S.W.2d 851, 855 (Tenn. 1996)).

The trial judge, who saw the witnesses and heard the testimony first-hand, specifically found that Officer Downing "requested that a family member request that the defendant return to the scene. The family member went to the home and the defendant voluntarily returned to the scene and attempted to perform field sobriety tests." (Emphasis added.) Thus, the defendant was not under arrest at that time and his statements to the officer were not a result of a custodial interrogation. Cf. Sides, slip op. at 5 ("Any evidence developed prior to the unlawful arrest need not be suppressed . . . ."). In our view, the trial court did not err by failing to suppress the defendant's pre-trial statements to police and his performance on the field sobriety tests.

Accordingly, the trial court's judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE