IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 23, 2002 Session

## STATE OF TENNESSEE v. CORY JAMES MARTIN

**Interlocutory Appeal from the Criminal Court for Anderson County**
**No. AOCR204      E. Eugene Eblen, Judge**

_____

**No. E2001-00914-CCA-R9-CD**
**May 9, 2002**
_____

The defendant, Cory James Martin, was indicted for two counts of rape of a child and three counts of especially aggravated sexual exploitation of a minor. After granting a motion to suppress two incriminating statements made by the defendant prior to his arrest, the trial court permitted the state an application for permission to appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. In this interlocutory appeal, the state asserts that the trial court erred by granting the motion to suppress. Because the defendant was not in custody at the time of the statements and Miranda warnings were not required, the judgment of the trial court is reversed and the cause is remanded for trial.

**Tenn. R. App. P. 9; Judgment of the Trial Court Reversed and Remanded**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA MCGEE OGLE, JJ., joined.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; and Jan Hicks, Assistant District Attorney General, for the appellant, the State of Tennessee.

James K. Scott, Oak Ridge, Tennessee, for the appellee, Cory James Martin.

### OPINION

On April 4, 2000, Detective Ron Boucher of the Oak Ridge Police Department telephoned the defendant, age 19, and asked that he voluntarily present himself for questioning. After driving to the police station and submitting to an interview, the defendant provided a statement to Detective Boucher and Department of Children's Services (DCS) caseworker Michelle Butcher, admitting his involvement in a number of crimes. Six days after the interview, the defendant returned to the police station and provided a handwritten version of the statement he had initially made. Later, when he was charged with rape of a child and especially aggravated sexual exploitation of a minor, the defendant sought to suppress the statements, contending that Detective Boucher had failed to provide Miranda warnings and asserting that the statements were involuntarily made.

At the hearing on the motion to suppress, Detective Boucher testified that when he asked the defendant to come to the police station, he did not inform the defendant of either the source or the nature of the allegations. According to Detective Boucher, the defendant agreed to an appointment scheduled for the next day. When the defendant arrived, he was directed to an interview room to speak with the detective and Ms. Butcher. During questioning, Detective Boucher partially closed the door of the interview room due to the "sensitivity" of the allegations involved. Detective Boucher testified that he informed the defendant that he was free to discontinue the interview and leave the police station at any time. According to Detective Boucher, the defendant appeared "a bit nervous" but did not ask to consult a lawyer or express a desire to leave.

Detective Boucher testified that when he informed the defendant that the allegations related to explicit photographs of minors, the defendant stated that he understood why he was there. During the course of the two-hour-and-ten-minute interview, Detective Boucher presented the defendant with 45 different photographs and the defendant was permitted to explain the circumstances surrounding the taking of the photographs. According to Detective Boucher, the defendant volunteered information that after one of the photo sessions, he had kissed a twelve-year-old, female victim. When Detective Boucher asked whether that was the only time the defendant had kissed the victim, the defendant answered, "Not that night." Detective Boucher testified that the defendant ultimately admitted that he had digitally penetrated the girl and that she had performed oral sex on him. The defendant left the police station after the interview and Detective Boucher told him that he would be in contact.

Some six days later, Detective Boucher asked the defendant to return to the police station to provide a written statement. According to Detective Boucher, the defendant agreed to this second meeting and, on this occasion, the defendant was left alone in the interview room. The door was open. According to Detective Boucher, the defendant did not ask for an attorney and was "very cooperative." When the defendant finished his written statement, he left the police station. Detective Boucher had no further contact with the defendant until after the grand jury returned the indictments against him in June of 2000, some two months after the interview.

Michelle Butcher, a caseworker with DCS, confirmed that she was present during the first interview. She testified that her tape recorder malfunctioned during a portion of the interview, but stated that she took notes. According to Ms. Butcher, it was her practice to utilize the tapes when typing her notes and then re-use the tapes for subsequent interviews. She testified that she eventually discarded the tape used during the interview of the defendant. It was not available at the time of the suppression hearing.

In granting the motion to suppress, the trial court concluded that, while the defendant "clearly was not 'in custody,' . . . the proper thing to do would have been to give the defendant the Miranda admonitions" when the questioning during the initial interview shifted in focus from the photographs to the sexual encounter. The trial court determined that the defendant understood that he was under no obligation to speak with Detective Boucher or Ms. Butcher, that he understood that he was free

to leave at any time, and that he left at the conclusion of each session. In the order of suppression, the trial court classified the written statement as "the fruit of the . . . poisonous" interview.

The state contends that the trial court erred by suppressing the statement on the basis of a Miranda violation because the defendant was not in custody. The defendant asserts that suppression was warranted due to the shift in focus of the interview after the defendant informed Detective Boucher that he had digitally penetrated the victim; he argues that each interview was the "functional equivalent" of custodial interrogation. In the alternative, the defendant argues that the statements should have been suppressed because Ms. Butcher's audiotape of the interview was discarded.

The standard of review applicable to suppression issues is well established. When the trial court makes a finding of facts at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). The trial court's findings are binding upon this court unless the evidence in the record preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); see also Stephenson, 878 S.W.2d at 544; State v. Goforth, 678 S.W.2d 477, 479 (Tenn. Crim. App. 1984). Questions of credibility of witnesses, the weight and value of the evidence and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence. Odom, 928 S.W.2d at 23.

The Fifth Amendment to the United States Constitution provides that "no person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V; see also Malloy v. Hogan, 378 U.S. 1, 6 (1964) (holding that the Fifth Amendment's protection against compulsory self-incrimination is applicable to the states through the Fourteenth Amendment). Article I, Section 9 of the Tennessee Constitution provides that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. "The significant difference between these two provisions is that the test of voluntariness for confessions under Article I, § 9 is broader and more protective of individual rights than the test of voluntariness under the Fifth Amendment." State v. Crump, 834 S.W.2d 265, 268 (Tenn. 1992).

Generally, one must affirmatively invoke these constitutional protections. An exception arises, however, when a government agent makes a custodial interrogation. Statements made during the course of a custodial police interrogation are inadmissible at trial unless the state establishes that the defendant was advised of his right to remain silent and his right to counsel and that the defendant then waived those rights. Miranda v. Arizona, 384 U.S. 436, 471-75 (1966); see also Dickerson v. United States, 530 U.S. 428, 444 (2000); Stansbury v. California, 511 U.S. 318, 322 (1994). A defendant's rights to counsel and against self-incrimination may be waived as long as the waiver is made voluntarily, knowingly, and intelligently. Miranda, 384 U.S. at 478; State v. Middlebrooks, 840 S.W.2d 317, 326 (Tenn. 1992). In order to effect a waiver, the accused must be adequately appraised of his right to remain silent and the consequence of deciding to abandon it. State v. Stephenson, 878 S.W.2d 530, 544-45 (Tenn. 1994). In determining whether a confession was voluntary and knowing, the totality of the circumstances must be examined. State v. Bush, 942

S.W.2d 489, 500 (Tenn. 1997). If the "greater weight" of the evidence supports the court's ruling, it will be upheld. Id. Yet, this court must conduct a de novo review of the trial court's application of law to fact. State v. Bridges, 963 S.W.2d 487 (Tenn. 1997); State v. Yeargan, 958 S.W.2d 626 (Tenn. 1997).

In Miranda, the United States Supreme Court limited its holding to a "custodial interrogation." Miranda, 384 U.S. at 478-79. The Court defined the phrase "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444. A person is "in custody" within the meaning of Miranda if there has been "a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (citation omitted). The Court has refused to extend the holding in Miranda to non-custodial interrogations. See Oregon v. Mathiason, 429 U.S. 492 (1977) (holding that an accused's confession was admissible because there was no indication that the questioning took place in a context where his freedom to depart was restricted in any way); see also Beheler, 463 U.S. at 1124-25 (noting that the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest). "To aid in determining whether a reasonable person would consider himself or herself in custody, [our high court] considers a variety of factors, including the following:

> [T]he time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.

State v. Walton, 41 S.W.3d 75, 82-83 (Tenn. 2001) (quoting State v. Anderson, 937 S.W.2d 851, 855 (Tenn. 1996)).

As indicated, the trial court concluded that the defendant was not in custody when he made the statements to police. The suppression hearing evidence established that the defendant chose the time of his first meeting with Detective Boucher. He drove to the police station. The interview occurred during the regular, daytime business hours of the police station. During the interview, Detective Boucher was unarmed. Although Ms. Butcher was present, the detective was the only law enforcement officer involved in the investigation. There was no evidence of either coercion or threat. Aside from a partially closed door, the defendant's freedom of movement was unrestricted. Further, there was proof that Detective Boucher informed the defendant that he was free to end the interview and leave at any time. By all indications, Detective Boucher's purpose was to obtain an

explanation of the photos. There was no expression of suspicion by the detective of more serious activities. The first reference to a sexual encounter between the defendant and the victim came from the defendant and, according to the proof submitted, was not in response to the questioning. Finally, at the conclusion of the interview, the defendant left in his own vehicle unescorted by police. At the second meeting, Detective Boucher asked the defendant to provide a written account of the statements he had given six days earlier. There were no additional questions. During this session, the defendant was alone in a room at the police station. The door was open. Again, the defendant arrived and left in his own vehicle. Two months passed before a formal arrest. By the application of the factors adopted by our supreme court, it is our view that the evidence does not preponderate against the trial court's determination that the defendant was not in custody at the time he gave the statements to police.

While concluding that the defendant was not in custody, the trial court ruled that Miranda warnings should have been given when the interview shifted in focus from the photographs to the sexual encounter with the minor victim. The trial court ruled as follows:

> When the interview changed from the subject of photographs of young girls in various poses simulating sexual activity to sexual penetration of a child under thirteen (13) years of age, the detective either knew or should have known that any incriminating statements made by the Defendant would result in prosecution for that offense. The proper thing to do would have been to give the Defendant the Miranda admonitions.

Although that may have been a preferable alternative, this court has been unable to find any authority that such a procedure is mandated by our federal or state constitution. Because the defendant was not in custody when he gave the statements, issuance of Miranda warnings was not required. Thus, the trial court erred by suppressing the statements.

The defendant also argues that the statements were properly suppressed because the state failed to preserve the tape recording of the first interview made by Ms. Butcher. While the trial court made mention of the failure to preserve the tape, it did not, as the defendant suggests, rule that the destruction of the tape was a basis for suppression of the statements.

Here, Ms. Butcher stated that she recorded the interview in order to facilitate her investigation into the possibility that the young girls in the photograph were being abused. She testified that it is her usual practice to use tapes more than once and discard them when they become unusable. In addition, only a portion of the first interview was recorded because Ms. Butcher's tape recorder malfunctioned.

In State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999), our supreme court rejected the bad faith test as to missing evidence and instead established a balancing test involving three steps. In Ferguson, the supreme court ruled that when the state has failed in its duty to preserve evidence, the court must consider several factors to determine the proper remedy. Those factors include:

(1) the degree of negligence involved;

(2) the significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and

(3) the sufficiency of the other evidence used at trial to support the conviction.

Ferguson, 2 S.W.3d at 917.

In these circumstances, the ruling in Ferguson appears to obligate the state to preserve the evidence. That it was destroyed appears to be the result of the negligence of either Detective Boucher or Ms. Butcher. Certainly, there was no proof of bad faith. In the notes prepared by Ms. Butcher, there remains available substitute evidence that appears both reliable and probative. Detective Boucher and Ms. Butcher were present during the first interview, as was the defendant. Each of them are potential witnesses at any ensuing trial and may testify as to the statements given during the interview. Other available evidence includes the photographs, some of which depict the defendant. Destruction of the tape of the first interview would not warrant suppression of the statements.

Accordingly, the order of suppression is reversed and the cause is remanded for trial.

_____
GARY R. WADE, PRESIDING JUDGE

-6-