STATE of Tennessee, Plaintiff–Appellee,

v.

Melvin CRUMP, Defendant–Appellant.

Supreme Court of Tennessee,
at Nashville.

May 18, 1992.

Charles W. Burson, Atty. Gen. & Reporter, Kathy M. Principe, Asst. Atty. Gen., Nashville, for plaintiff-appellee.

Donald E. Dawson, Searcy, Smith & Dawson, Edmund L. Carey, Jr., Neal & Harwell, Nashville, for defendant-appellant.

## OPINION

ANDERSON, Justice.

In this interlocutory appeal, we are asked to decide whether the defendant's confession was obtained in violation of his rights under the Fifth Amendment of the United States Constitution and Article I, § 9 of the Tennessee Constitution. Specifically, we are concerned with the effect of a police failure to scrupulously honor the defendant's invocation of his *Miranda* right to silence upon the admissibility of the defendant's later confession obtained after a re-warning of his *Miranda* rights. The trial court suppressed the confession; however, the Court of Criminal Appeals reversed. We disagree and hold the confession is inadmissible for the reasons set forth below.

### FACTUAL HISTORY

On September 27, 1988, between Noon and 1:00 p.m., the defendant, Melvin Crump, was arrested at a private Nashville residence. At the time of his arrest, Crump was wanted for escaping from a work detail for the Department of Corrections, where he had been serving time for burglary and second-degree murder. In addition, Crump was wanted as a suspect in the murder of Eliza Mae Smith on August 26, 1988, the day of Crump's escape.

When he was arrested, Crump was handcuffed and placed in the front seat of Sergeant Robert Moore's unmarked police car. While he was sitting in the car, Detective Grady Elam read Crump his *Miranda* rights and asked him if he understood them. Crump acknowledged that he understood his rights and indicated that he did not want an attorney.

Elam then asked, "Having these rights in mind, do you wish to talk to us now?" Regarding Crump's answer, Elam testified:

> I don't remember exactly what he said. It was either, "I don't have anything to say right now," or "I don't have anything to say." I'm not sure exactly what the wording was, but he did not have anything to say to me.

Following Crump's response, Detective Elam terminated his questioning of the defendant and informed him that he was under arrest for escaping from the state penitentiary. Elam also told the defendant that he was a suspect in the murder of Eliza Smith, a lady who lived down the street from the arrest scene. Crump responded to this information by stating that "I don't know anything about that."

While Detective Elam was occupied with Crump, other officials spent approximately 20 minutes investigating the scene by interviewing neighbors and searching the defendant's room. During the course of this brief investigation, Sergeant Moore approached Detective Elam to inquire whether Crump had been advised of his rights, and Elam responded affirmatively. Although Moore denied asking or being told anything else, Detective Elam testified that he also told Sergeant Moore that Crump said he did not have anything to say.

After the investigation at the scene was concluded, the defendant was transported to the police station by Sergeant Moore and Detective Elam. At some point during the course of their 10-minute trip to the station, Sergeant Moore described to Elam his plan to take Crump on a ride through north Nashville to retrace his escape route, with

the hope of "learn[ing] something that deals with the homicide." Moore testified that he asked Crump if he would "mind riding with us back to the scene of where he had escaped," and the defendant "said he didn't have any problem with it."

Upon arriving at the station approximately 30 minutes after giving Crump his first *Miranda* warnings, Detective Elam exited Moore's vehicle and entered the station to begin the paperwork on Crump's arrest. Outside the station, Sergeant Moore met Detectives Mike Smith and Ed Moran, who had participated in the arrest, and asked them if they would accompany him and Crump on the ride. The detectives agreed and got in the back seat, while Crump rode handcuffed in the front with Sergeant Moore.

The officers began the 30 to 45–minute ride by driving out to the day care center in north Nashville where Crump had escaped from a prison work detail.[1] From there, they proceeded to retrace the defendant's escape route as he described it to the officers. During the course of the trip, Sergeant Moore testified that Crump seemed disinterested and even "nodded off" to sleep at one point.

When Crump's directions took the officers within the vicinity of the Maxwell House Hotel, Sergeant Moore stopped the vehicle and asked Crump if he had stolen anything out of a car in the hotel parking lot. Crump responded by admitting that he had taken items from the car, but said he had later thrown them away. Then Sergeant Moore told Crump that the items stolen from the car were found at the scene of Eliza Smith's murder. Moore testified that after he told him this, Crump just hung his head and it was obvious that an emotional change took place. Moore said that Crump's mannerisms showed him that the officers suddenly had Crump's atten-

tion and that Crump knew the police were on to him.

Following his incriminating responses, Crump and the officers headed back to the station, where they arrived between 2:00 and 2:30 p.m. When they arrived, Detective Elam noted that although Crump did not show signs of physical abuse, he did show signs of "mental abuse." Detective Elam testified that Crump "looked like he was upset," probably "just the emotion of being arrested."

At the station, Crump was taken to an office and read his *Miranda* rights by Detective Smith.[2] After signing a written waiver of his rights at 2:45 p.m., Crump gave a taped confession of how he strangled Eliza Mae Smith and removed $20 and change from her apartment on the day of his escape. Subsequently, Crump was escorted to booking by Sergeant Moore and thereafter taken before a magistrate at 3:30 p.m.

Following a suppression hearing, the trial court found that the defendant had invoked his constitutional right to remain silent when he told Detective Elam at the arrest scene that he did not have anything to say. The trial court then determined that the admissibility of any statement solicited by subsequent questioning would depend on whether the defendant's invocation of the right to remain silent was "scrupulously honored" under *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

Applying this standard, the trial court found that Crump's right to cut off questioning and remain silent was not "scrupulously honored," and that both the oral statements made during the ride and the taped confession had to be suppressed. The trial court then granted the State's

---

1. The defendant testified that the ride lasted 2½ hours and that during this ride, he was taken to a remote location and beaten by all three officers until he agreed to confess. The trial court did not credit his testimony, but we need not address this issue because we hold the defendant's confession inadmissible on other grounds.

2. During the portion of the warnings pertaining to the right to have counsel present, Crump interrupted Smith with a statement that is inaudible on the tape. Crump argues that he requested counsel at that point, but we need not address this issue because we hold his confession inadmissible on other grounds.

motion for an interlocutory appeal pursuant to Tenn.R.App.P. 9.

The Court of Criminal Appeals reversed the trial court's decision with respect to the taped confession, finding that the determination of whether the police "scrupulously honored" the defendant's invocation of his right to remain silent is only the first prong of a two-prong analysis. The second prong of the analysis, according to the Court of Criminal Appeals, is whether the police violation was of constitutional dimension or merely a violation of *Miranda's* prophylactic rules under *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

Since the appellate court found that the police misconduct in continuing to question Crump after he invoked his right to remain silent was merely a violation of *Miranda's* prophylactic rules, the court determined that the only relevant inquiry was whether under *Elstad* the taped confession was given knowingly and voluntarily. Finding that it had been given knowingly and voluntarily following *Miranda* warnings and a signed waiver of rights, the Court of Criminal Appeals held the taped confession admissible.

## CONFESSIONS AND SELF–INCRIMINATION RIGHTS

The only issue to be addressed on this interlocutory appeal is whether the defendant's confession should be suppressed because it was obtained in violation of his rights under the Fifth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution. The defendant contends that the police conduct in continuing to question him after he invoked his right to remain silent was in violation of his constitutional rights, and therefore, the taped confession should be excluded as an involuntary confession and as tainted "fruit of the poisonous tree." The State, on the other hand, argues that the police misconduct was merely a violation of *Miranda's* prophylactic rules and that the taped confession should be admissible as a voluntary confession.

■ The Fifth Amendment to the United States Constitution, which is applicable to the States through the Fourteenth Amendment, *see Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." The corresponding provision of the Tennessee Constitution provides "[t]hat in all criminal prosecutions, the accused ... shall not be compelled to give evidence against himself." Tenn.Const. art. I, § 9. The significant difference between these two provisions is that the test of voluntariness for confessions under Article I, § 9 is broader and more protective of individual rights than the test of voluntariness under the Fifth Amendment. *See State v. Smith,* 834 S.W.2d 915 (Tenn.1992).

Prior to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the admissibility of an accused's in-custody statements depended on whether they were "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment. *See, e.g., Haynes v. Washington,* 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). In *Miranda,* however, the U.S. Supreme Court limited the admissibility of statements that would ordinarily meet the due process test of voluntariness in order to combat the inherently compelling pressures of in-custody interrogation and to permit a full opportunity to exercise the privilege against self-incrimination.

The *Miranda* court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. At a minimum, the Court held that the procedural safeguards must include warnings prior to any custodial questioning that the accused has the right to remain silent, that any statement he makes may be used as evidence against him, and that he has the right to have an attorney present during questioning, whether retained or appointed. *Id.*

Although the court stated that these rights could be waived by an accused if the waiver was made "voluntarily, knowingly, and intelligently," *id.*, the court reiterated that "the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." *Id.*, 384 U.S. at 467, 86 S.Ct. at 1624, 16 L.Ed.2d at 719. To fully honor an accused's self-incrimination rights, the court stated that "[o]nce warnings have been given, ... [i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At that point, he has shown that he intends to exercise his Fifth Amendment privilege." *Id.*, 384 U.S. at 473–74, 86 S.Ct. at 1627, 16 L.Ed.2d at 723.

Although the court held that interrogation must cease when an accused indicates that he wishes to remain silent, the court did not set forth the circumstances under which the police could resume interrogation without violating an accused's self-incrimination rights. This question, however, was addressed by the court in *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

In *Mosley*, the defendant was arrested as a suspect in a series of robberies and advised of his *Miranda* rights. After stating that he did not want to answer any questions about the robberies, the arresting officer immediately ceased the interrogation and took the defendant to his cell. Approximately two hours later, a different officer re-advised the defendant of his *Miranda* rights and interrogated him about an unrelated homicide. During the course of this interrogation, the defendant made a statement implicating himself in the homicide, which he later challenged on constitutional grounds.

After reviewing the *Miranda* decision, the *Mosley* court concluded that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Id.*, 423 U.S. at 104,

96 S.Ct. at 326, 46 L.Ed.2d at 321. Under the facts presented, the Court determined that the defendant's right to cut off questioning had been "scrupulously honored" because "the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation." *Id.*, 423 U.S. at 106, 96 S.Ct. at 327, 46 L.Ed.2d at 322. In reaching its conclusion, the *Mosley* court distinguished the facts of its case from a case "where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind." *Id.*, 423 U.S. at 105–06, 96 S.Ct. at 327, 46 L.Ed.2d at 322.

█ The facts presented in this appeal clearly demonstrate that Crump's right to cut off questioning by invocation of his right to remain silent was not "scrupulously honored." Thirty minutes after responding to *Miranda* warnings with "I don't have anything to say," he was taken on a 30 to 45–minute drive and questioned while retracing the route of his escape. This clearly constituted an impermissible resumption of in-custodial interrogation, which caused the admissions made by Crump during the drive to be inadmissible.

The result is not changed by the fact that Sergeant Moore may not have known that the defendant had invoked his right to remain silent after Detective Elam read Crump his *Miranda* rights. *See Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). Neither does the fact that the defendant agreed to accompany the officers on the drive change the result. *Miranda* is clear in its mandate that "a warning at the time of the interrogation is indispensable to overcome its pressures and to insure that the individual knows he is free to exercise the privilege at that point in time." *Miranda*, 384 U.S. at

469, 86 S.Ct. at 1625, 16 L.Ed.2d at 720.[3]

Having concluded that the police failed to "scrupulously honor" Crump's right to cut off questioning by interrogating him on the drive, we must determine what effect this failure has upon the admissibility of the defendant's subsequent taped confession. As a matter of federal constitutional law, the relevant inquiry is whether the police failure to scrupulously honor the defendant's invocation of his right to remain silent merely violated *Miranda's* procedural rules or violated the defendant's constitutional rights. *Oregon v. Elstad,* 470 U.S. 298, 306, 105 S.Ct. 1285, 1290, 84 L.Ed.2d 222, 230 (1985); *State v. Smith,* 834 S.W.2d 915 (Tenn.1992). This distinction is crucial under federal law because failure to comply with *Miranda's* procedural guidelines does not result in the same consequences as police infringement of a constitutional right. *Elstad,* 470 U.S. at 304, 105 S.Ct. at 1290, 84 L.Ed.2d at 229; *Smith,* 834 S.W.2d at 918.

Under federal law, if police conduct only results in a violation of *Miranda's* procedural guidelines, the admissibility of a subsequent confession depends solely on whether it was made knowingly and voluntarily. *Elstad,* 470 U.S. at 309, 105 S.Ct. at 1293, 84 L.Ed.2d at 232; *Smith,* 834 S.W.2d at 918. However, if the police conduct results in a federal constitutional violation, the inquiry becomes whether the subsequent confession was involuntary, and whether it was obtained as a result of that violation and therefore must be excluded as tainted "fruit of the poisonous tree." *Elstad,* 470 U.S. at 305, 105 S.Ct. at 1291, 84 L.Ed.2d at 230; *Smith,* 834 S.W.2d at 921.

After reviewing the record, we conclude that the police failure to scrupulously honor Crump's invocation of his right to remain silent amounted to a violation of the defendant's state and federal constitutional rights. The defendant was read his *Miranda* rights and responded by stating that he "did not have anything to say." This language is sufficient to assert the legal right to remain silent, *O'Brien v. State,* 221 Tenn. (25 McCanless) 346, 350, 426 S.W.2d 507, 508 (1968), and "[a]t this point, he has shown that he intends to exercise his Fifth Amendment privilege." *Miranda,* 384 U.S. at 474, 86 S.Ct. at 1627, 16 L.Ed.2d at 723. Once an individual invokes his right to remain silent and the police fail to honor that invocation by continuing to interrogate him, that violation, by definition, is of constitutional magnitude. *State v. Hartley,* 103 N.J. 252, 273, 511 A.2d 80, 91 (1986). *See also, Wainwright v. Greenfield,* 474 U.S. 284, 293, 106 S.Ct. 634, 639, 88 L.Ed.2d 623, 631 (1986) (invocation of the right to silence after *Miranda* warnings is of "constitutional dimension").

The dissent maintains that this case is controlled by *Oregon v. Elstad* and, as a result, the police failure to scrupulously honor the defendant's right to cut off questioning was merely a violation of *Miranda's* procedural rules. *Elstad,* however, addressed the effect of an initial police failure to administer *Miranda* warnings on the admissibility of a defendant's subsequent statements made after being fully advised of, and having waived his *Miranda* rights. *Elstad,* 470 U.S. at 300, 105 S.Ct. at 1288, 84 L.Ed.2d at 226. Like the Supreme Court of New Jersey, "we perceive a qualitative difference between a failure to administer *Miranda* warnings in the first place, and a failure to honor, after they have been asserted, the constitutional rights those warnings are designed to secure." *State v. Hartley,* 103 N.J. at 272, 511 A.2d at 90.

Moreover, Justice O'Connor, writing for the majority, conceded in *Elstad* "that its new analysis does not apply where the authorities have ignored the accused's actual invocation of his *Miranda* rights to remain silent or consult with counsel." *Elstad,* 470 U.S. at 346, 105 S.Ct. at 1312, 84 L.Ed.2d at 256, n. 28 (Brennan, J., dissent-

---

**3.** While a contemporaneous warning is thus absolutely necessary to the subsequent admissibility of a statement, we in no way intimate that police are free to ignore a suspect's invocation of his right to silence so long as they re-adminis-

ter *Miranda* warnings where this tactic rises to the level of "repeated efforts to wear down his resistance and make him change his mind." *Mosley,* 423 U.S. at 105–06, 96 S.Ct. at 327, 46 L.Ed.2d at 322.

ing). Justice O'Connor specifically found that "inapposite are the cases the dissent cites concerning suspects whose invocation of their rights to remain silent and to have counsel present were flatly ignored while police subjected them to continued interrogation." *Id.,* 470 U.S. at 313–14, 105 S.Ct. at 1295, 84 L.Ed.2d at 235, n. 3.

The dissent, in essence, argues that it is not a constitutional violation if the police inadvertently, as opposed to deliberately, fail to scrupulously honor an accused's initial invocation of the right to silence. We disagree. If this were the rule, the police could never violate an accused's constitutional rights as long as one officer gives the *Miranda* warnings, and another officer conducts the interrogation without asking or being told that the accused responded to the warnings by saying either (1) that he does not want to talk to the police, or (2) that he wants an attorney. Adopting the dissent's argument would move the state of criminal law back to the time before *Miranda* when the admissibility of confessions was determined only under the due process test of voluntariness without considering whether "the accused [had been] adequately and effectively apprised of his rights and [whether] the exercise of those rights [had been] fully honored." *Miranda,* 384 U.S. at 467, 86 S.Ct. at 1624, 16 L.Ed.2d at 719. Such a step back in legal time is totally unacceptable.

Having found that the police violated the defendant's state and federal constitutional rights, we must now determine whether the subsequent taped confession was involuntary, and whether it must be excluded as the tainted "fruit" of the constitutional violation. *Elstad,* 470 U.S. at 305, 105 S.Ct. at 1291, 84 L.Ed.2d at 230; *Smith,* 834 S.W.2d at 919. Our review of the record convinces us that, as a matter of state and federal constitutional law, the taped confession was both involuntary and tainted by the prior constitutional violation.

■ In determining whether a subsequent confession was made knowingly and voluntarily, courts must examine the totality of the circumstances. *Elstad,* 470 U.S. at 318, 105 S.Ct. at 1298, 84 L.Ed.2d at 238;

*State v. Kelly,* 603 S.W.2d 726, 728–29 (Tenn.1980). The question in each case is whether the conduct of the law enforcement officers was such to undermine the accused's free will and critically impair his capacity for self-determination so as to bring about an involuntary confession, *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037, 1057–58 (1961); *Kelly,* 603 S.W.2d at 728.

■ Guided by the voluntariness factors set forth in *State v. Smith,* 834 S.W.2d at 919–20, we find that the police conduct in this case undermined Crump's free will and brought about an involuntary confession. The confession immediately followed the 30 to 45–minute drive, where the police questioned and obtained incriminating statements from the defendant in violation of his constitutional rights. As a result, at the time of his confession, the defendant was still laboring under the psychological impact of having already confessed and "let the cat out of the bag" during the drive.

Sergeant Moore testified that it was obvious an emotional change took place in Crump when he learned that the police were on to him and made incriminating statements. Upon making the admissions, Crump was immediately returned to the station, where Detective Elam observed he showed signs of mental abuse. After his return to the station, Crump was immediately taken to an office, where he promptly confessed after he was given *Miranda* warnings.

Under these circumstances, we find that Crump's taped confession was involuntary. Although we realize that having already "let the cat out of the bag" does not automatically vitiate voluntariness, *see Smith,* 834 S.W.2d at 919, we hold that there was not a sufficient break in the stream of events between the first inadmissible statements and the subsequent confession such that the subsequent confession may be fairly said to have resulted from an independent and voluntary act of free will, rather than a continuous chain of events initiated by the improper questioning. *See Clewis v. Texas,* 386 U.S. 707, 710, 87 S.Ct.

1338, 1340, 18 L.Ed.2d 423, 427 (1967); *Westover v. United States*, 384 U.S. 436, 494–97, 86 S.Ct. 1602, 1638–39, 16 L.Ed.2d 694, 735–36 (1966). Therefore, we hold that the prosecution failed to successfully rebut the presumption that the illegally-obtained, initial statements given on the drive also tainted the subsequent confession given by Crump. *State v. Smith, supra*, 834 S.W.2d at 921.

In addition to holding Crump's confession involuntary, we also hold that it was obtained as a result of the prior constitutional violation and, therefore, must be excluded as the "fruit of the poisonous tree." The factors to be examined in determining whether a confession has been purged of the taint of a prior constitutional violation include: (1) the giving of proper *Miranda* warnings; (2) the temporal proximity of the police misconduct and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416, 427 (1975); *State v. Chandler*, 547 S.W.2d 918, 920 (Tenn.1977).

Although the officers did administer *Miranda* warnings before obtaining the taped confession, there were no intervening circumstances. In addition, the temporal proximity of the police misconduct to the confession was too short to purge the confession of the taint of the prior constitutional violation. Therefore, we find that the taped confession is inadmissible "fruit of the poisonous tree."

## CONCLUSION

Accordingly, we hold that the taped confession is inadmissible in the State's case-in-chief against the defendant because it was not voluntary, and because it is tainted by the violation of the defendant's state and federal constitutional rights. We reverse the decision of the Court of Criminal Appeals and affirm the trial court's judgment. This case is remanded to the trial court for a trial upon the merits. The costs of this appeal are taxed to the State of Tennessee.

REID, C.J., and DAUGHTREY, J., concur.

DROWOTA and O'BRIEN, JJ., dissent.

DROWOTA, Justice, dissenting.

I agree that Defendant's invocation of his right to remain silent was not scrupulously honored. However, because the record does not establish that the officers used "deliberately coercive or improper tactics in obtaining the initial statement," *see Oregon v. Elstad*, 470 U.S. 298, 314, 105 S.Ct. 1285, 1296, 84 L.Ed.2d 222 (1985), I would hold that the police failure to scrupulously honor Defendant's initial invocation of *Miranda* silence did not rise to the level of a constitutional violation. Therefore, the admissibility of Defendant's later confession should be determined by examining whether it was made voluntarily.

The Fifth Amendment to the United States Constitution and Article I, Section 9, of the Tennessee Constitution prohibit compulsory self-incrimination. Actual compulsory self-incrimination, for example, torture or repeated efforts to wear down a defendant's resistance, directly violates these constitutional provisions.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court promulgated safeguards to combat the compulsion presumed to be present in all custodial interrogations. Statements obtained in violation of these procedural safeguards are excluded because the procedural violation creates a presumption of compulsion. Violation of the *Miranda* safeguards does not, however, necessarily mandate the finding of a constitutional violation. *See Elstad*, 470 U.S. at 307, 105 S.Ct. at 1292 ("*Miranda* ... provides a remedy even to the defendant who has suffered no identifiable constitutional harm").

Here, Defendant invoked his right to remain silent. The officers then violated *Miranda* when they asked Defendant if he would "mind riding with [them] back to the scene of where he had escaped." Because the officers did not scrupulously honor Defendant's invocation, the resulting state-

ments were properly excluded according to the dictates of *Miranda*. However, while this violation resulted in a presumption of compulsion under *Miranda*, it did not rise to the level of actual compelled self-incrimination so as to constitute a constitutional violation: Defendant was not forced to accompany the officers, nor was he subject to torture or repeated efforts to wear down his resistance.

Because there was no constitutional violation, the Defendant's subsequent taped confession is not to be evaluated in terms of whether it is inadmissible "fruit of the poisonous tree." Rather, the confession is admissible if, after examining the totality of the circumstances surrounding the entire course of police conduct, the confession is found to have been voluntarily made. I would so find, and affirm the Court of Criminal Appeals's holding that the Defendant, after being given a second *Miranda* warning, validly waived his right to remain silent and that therefore the subsequent confession was admissible. "When neither the initial nor the subsequent admission is coerced, little justification exists for permitting the highly probative evidence of a voluntary confession to be irretrievably lost to the factfinder." *Elstad*, 470 U.S. at 312, 105 S.Ct. at 1294–95. The taped confession should be admitted in the State's case in chief against the Defendant.

I am authorized to state that Justice O'Brien concurs in this dissenting opinion.