IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 12, 2003 Session

## STATE OF TENNESSEE v. JOHN E. TURNER

**Appeal from the Circuit Court for Rutherford County**
**No. F-51144A    James K. Clayton, Jr., Judge**

---

**No. M2002-02454-CCA-R3-CD - Filed December 18, 2003**

---

The Appellant, John E. Turner, appeals his conviction by a Rutherford County jury for especially aggravated robbery, a class A felony. The single issue for our review is whether the trial court erred by not suppressing Turner's statement to the police and the victim's gun, which was discovered as a result of his statement. After a review of the record, we conclude that the Appellant's statement was obtained in violation of his Fifth Amendment right to remain silent. Moreover, we conclude that the stolen weapon is also inadmissible unless, upon remand, the State can show either that the police had an independent, untainted source for the information leading to the gun or that the gun would have been inevitably discovered through routine police investigation. Accordingly, the judgment of conviction is reversed and the case is remanded for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Reversed and Remanded.**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JERRY L. SMITH, J., joined.

Joe M. Brandon, Jr., Smyrna, Tennessee, for the Appellant, John E. Turner.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Elizabeth B. Marney, Assistant Attorney General; and William C. Whitesell, Jr., District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

In the early afternoon of April 30, 2001, the victim, Reggie Bowling, drove to the Imperial Garden Apartments in Smyrna. At some point in the evening, the victim, who had been drinking throughout the day, passed out in his automobile, which was parked in the apartment parking lot.

This same evening, the Appellant and Michael H. Martin, a/k/a Harvey Martin, visited the apartment of Angel Smith and Olivia Jordan, which was located in the complex. Jordan observed the victim passed out in his car from the balcony of her apartment. She left the apartment and went to the car. Jordan returned to the apartment with a "black gym bag," which contained some clothing. Jordan again left the apartment and returned with the victim's wallet. Jordan informed the group that she was getting the items from "a guy in the parking lot passed out." Both the Appellant and Martin then observed the victim inside his vehicle; however, they went back inside. On Jordan's third trip to the victim's vehicle, she returned with a gold necklace and a .25 caliber automatic pistol. The Appellant took possession of the weapon.

A discussion ensued about taking the victim's car and selling it in Alabama. The Appellant stated he did not participate in this conversation. The Appellant, Martin, Jordan, and Smith then went outside, and Martin opened the car door, rousing the victim. Martin then struck the victim with a beer bottle and called to the Appellant for help. The Appellant opened the back door and struck the victim. The victim fell out of the car onto the pavement. Martin and Jordan left the apartment complex in the victim's vehicle, and Smith and the Appellant left in Smith's vehicle. The parties separated, with Martin and Jordan continuing on their trip to Alabama. The trip ended when the two ultimately wrecked the victim's vehicle.

On May 1, 2001, at approximately 2:54 p.m., the Appellant was stopped and charged with Driving on a Suspended License. The Appellant was taken to the Smyrna Police Department and interviewed by Detectives Jeff Duke and Todd Spearman about the robbery. Previously, Jordan had been questioned by the police and informed them of the Appellant's involvement in the crime. In the interview room, the Appellant was read his Miranda rights and signed a waiver of rights form at 3:39 p.m.; however, the Appellant advised that he would not prepare a written statement. Early in the interview, the Appellant stated to the detectives, "I don't have anything to say." During this initial interview period, the Appellant continually denied any knowledge of the events. This portion of the interview lasted twenty to thirty minutes. The interview terminated when the detectives learned that Martin had just been arrested and was being held for questioning. After questioning Martin for approximately fifteen to twenty minutes, he admitted to both his and the Appellant's involvement in the crime. The detectives then returned to further interrogate the Appellant. During this second period of questioning, the Appellant made numerous incriminating statements, including that he struck the victim and describing the location of the victim's gun. Upon becoming upset with the detectives' questions, the Appellant requested an attorney, and the interview ceased. This second part of the interview lasted approximately thirty minutes.

On May 8, 2001, the Appellant, Martin, and Jordan were indicted for attempted second degree murder and especially aggravated robbery. The murder charge was dismissed on the morning of the trial. The Appellant filed a motion to suppress his statement and the subsequent discovery of the victim's gun in his home, which was denied. Following a jury trial, the Appellant was convicted of especially aggravated robbery. He now appeals, arguing that "the trial court erred in not suppressing [his] statements after he stated he had nothing to say: which would also result in a suppression of the handgun."

## ANALYSIS

In reviewing a denial of a motion to suppress, this court looks to the facts adduced at the suppression hearing which are most favorable to the prevailing party. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). In considering the evidence presented at the hearing, this court extends great deference to the fact-finding of the suppression hearing judge with respect to weighing credibility, determining facts, and resolving conflicts in the evidence. *Id.; see also State v. Walton,* 41 S.W.3d 75, 81 (Tenn. 2001). Indeed, these findings will be upheld unless the evidence preponderates otherwise. *Daniel*, 12 S.W.3d at 423. Furthermore, this court may consider the entire record, including the evidence submitted both at the suppression hearing and at trial, in evaluating the correctness of the trial court's ruling. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998). Although deference is given to the trial court's findings of fact, this court conducts its own appraisal of the constitutional questions presented by reviewing the law and applying it to the specific facts of the particular case. *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998) (citing *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)).

## I. Statement to Law Enforcement Officers

That a defendant has a constitutional right to remain silent in the face of accusations against him, not only during his trial but also upon arrest and while in custody, is a rule so fundamental as to require little elaboration. *Braden v. State*, 534 S.W.2d 657, 660 (Tenn. 1976) (citations omitted). When a suspect clearly articulates during custodial interrogation that he wishes to invoke the Fifth Amendment privilege against self-incrimination, the officers conducting the interrogation must stop questioning the suspect. *State v. Crump*, 834 S.W.2d 265, 269 (Tenn.), *cert. denied*, 506 U.S. 905, 113 S. Ct. 298 (1992) (citing *Miranda v. Arizona*, 384 U.S. 436, 473-74, 86 S. Ct. 1602, 1627 (1966)). Furthermore, "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S. Ct. 321, 326 (1975); *see also State v. Cameron*, 909 S.W.2d 836, 847 (Tenn. Crim. App. 1995). Before the police must scrupulously honor a suspect's right to remain silent, the suspect must clearly articulate that right so that a reasonable police officer under the circumstances would understand the suspect's words and conduct to mean that the suspect wants to exercise his right to cut off further questioning. *State v. William M. Hukowicz*, No. M1999-00073-CCA-R9-CD (Tenn. Crim. App. at Nashville, Aug. 18, 2000). In *Hukowicz*, the defendant, when asked about the night in question, told the detective that he could not comment and, although he wanted to comment, he "knew better." *Id*. A panel of this court concluded that a reasonable police officer under the circumstances should have known that the defendant was invoking his right to terminate questioning. *Id*. In the present case, the trial court found that the Appellant had invoked his right to remain silent. We agree that the record supports the trial court's finding that the Appellant invoked this right.

Nonetheless, the State contends that, although the Appellant invoked this right, he initiated further communications with the detectives "by repeatedly asking what was going to happen to him and whether he could work out a deal." When it is the State's contention that an accused waived his

right to remain silent, having once invoked that right, the State must meet a heavy burden of demonstrating by clear and convincing evidence that an accused initiated the subsequent discussion and that he voluntarily, knowingly, and intelligently waived his right. *See State v. Aaron McFarland*, No. W1999-01410-CCA-R3-CD (Tenn. Crim. App. at Jackson, Aug.4, 2000) (citing *State v. Tidwell*, 775 S.W.2d 379, 386 (Tenn. Crim App. 1989)). The trial court found that "[d]uring the initial part of the interview, however, Mr. Turner did say he didn't want to talk to the police department, but he continued to talk to the police department[.] . . . He didn't request a lawyer until we got in the second part of the interview after the gun had been recovered." With regard to the trial court's finding that the Appellant "continued to talk," we conclude that this finding is ambiguous and that the evidence preponderates otherwise. At the suppression hearing, Detective Duke testified that, during the initial interview period, the Appellant "would say I don't have anything to say. And then he would turn around and go what's going to happen to me, which to me opens the door back up." This represents the only testimony that the Appellant initiated further communication with the detectives after invoking his right to remain silent. Repeatedly asking "what's going to happen to me," does not, by itself, indicate that the Appellant wanted to again waive his right to remain silent and continue with questioning. We conclude that, without more, the State did not demonstrate, by clear and convincing evidence, that the Appellant initiated further communication with the police and that he voluntarily, knowingly, and intelligently waived his right to remain silent. After the Appellant invoked his right to remain silent, the police immediately continued to question him. While it is true that the Appellant did not request an attorney until the second part of the interview, such request is immaterial to whether or not the Appellant invoked his right to remain silent during the initial stage of the interview. It is clear, from the record, that the police did not "scrupulously honor" his invocation of his right to remain silent.

Thus, we must determine whether the statement was obtained as a result of the prior constitutional violation and, therefore, must be excluded. The factors to be examined in determining whether a confession has been purged of the taint of a prior constitutional violation include: (1) the giving of proper Miranda warnings; (2) the temporal proximity of the police misconduct and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. *State v. Huddleston*, 924 S.W.2d 666, 674-75 (Tenn. 1996) (citing *Brown v. Illinois*, 422 U.S. 590, 603-04, 95 S. Ct. 2254, 2261-62 (1975)); *see also Crump*, 834 S.W.2d at 272.

## A. *Miranda* Warnings

Here, it is undisputed that the Appellant received *Miranda* warnings before he was questioned by the detectives and that he signed a written waiver of his rights before he made his initial verbal statement. Thus, this factor weighs in favor of the State. However, *Miranda* warnings alone do not *per se* authorize the admission of the subsequent confession. *Brown*, 422 U.S. at 603, 95 S. Ct. at 2261.

**B. Temporal Proximity**

The Appellant's statements were made only one to one and one-half hours after the initial "illegality." He was in custody for the entire period, continued to make broad incriminating statements, and turned over additional evidence, *i.e*, the location of the victim's weapon. Thus, there is no indication that adequate time elapsed to allow the defendant to formulate "free will" sufficient to remove the taint caused by the illegality. *Brown*, 422 U.S. at 598, 95 S. Ct. at 2259; *see also State v. Johnson*, 980 S.W.2d 414, 424 (Tenn. Crim. App. 1998). This factor weighs heavily in favor of suppression.

**C. Intervening Circumstances**

There were no intervening circumstances sufficient to undermine the inference that the confession was tainted by the constitutional violation. The detectives' conversation with co-defendant Martin was the only possible intervening circumstance. Prior to the detectives' conversation with Martin, the Appellant denied any involvement in the crime. After the detectives spoke with Martin and returned to question the Appellant, he confessed. However, the Appellant had previously been informed, during the initial stage of the interview, that there was a witness who implicated him in the crime. Thus, this factor also weighs in favor of suppression.

**D. Flagrancy of the Misconduct**

The fourth factor, the one which the supreme court has placed the most significance upon, weighs heavily in favor of suppression. At the suppression hearing, Detective Duke made the following comments:

> A. No, sir. He at any point – all he has to say is I want an attorney. If he says I want an attorney, I stop talking to him.
>
> . . .
>
> Q. The magical thing you are hinging on as to when somebody would invoke their Miranda warnings in this particular case is that he has to say I want a lawyer?
>
> A. When I read someone their rights – . . . at any point they say I would like to have an attorney, I think I need an attorney – . . . once they say that, I'm through with them.

Relying on these facts, we conclude that there was flagrant misconduct. According to Detective Duke, questioning would only cease upon invocation of the right to an attorney. This completely ignores one's constitutional right to remain silent.

Accordingly, three of the four factors support suppression of the Appellant's incriminating statements. It is clear that these statements were obtained as a direct result of the constitutional violation. Therefore, the entire statement following the Appellant's invocation of his rights, *i.e.*, anything after the first time the Appellant said, "I don't have anything to say," must be suppressed.

## II. Victim's gun

Arguing the "fruit of the poisonous tree" doctrine, the Appellant asserts that the victim's gun, which was recovered from his home, should have been suppressed because the detectives gained information about the gun's location from him after he had asserted his right to remain silent. The Tennessee Supreme Court, concerning this issue, recently held that a *per se* exclusionary rule, which would automatically exclude non-testimonial evidence obtained from a technical failure to give Miranda warnings, is not warranted. *State v. Walton*, 41 S.W.3d 75, 92 (Tenn. 2001). Instead, a defendant may seek suppression of non-testimonial evidence discovered through his or her unwarned statements *only when the statements are the product of an actual violation of the privilege against self-incrimination*, *i.e*., such as when actual coercion in obtaining the statement is involved, or when the invocation of the *right to remain silent* or to have counsel present is not "scrupulously honored." *Id*. (emphasis added). While the gun is non-testimonial evidence, we have already determined that the Appellant's right to remain silent was not "scrupulously honored." Therefore, under *Walton,* the exclusionary rule would extend to the gun, which was obtained in violation of his federal and state constitutional rights to be free of compelled self-incrimination. *See State v. Crump*, 834 S.W.2d 265, 270 (Tenn. 1992) (holding failure of police to "scrupulously honor" the defendant's invocation of his right to remain silent is a violation of the defendant's constitutional rights to be free of compelled self-incrimination, not merely a violation of *Miranda's* procedural rules).

Ordinarily, evidence obtained through the violation of a suspect's constitutional rights must be excluded at trial. *See, e.g., Wong Sun v. United States*, 371 U.S. 471, 485, 83 S. Ct. 407, 416 (1963); *Mapp v. Ohio*, 367 U.S. 643, 646-49, 81 S. Ct. 1684, 1686-88 (1961); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S. Ct. 182, 183 (1920). When, however, the prosecution can show either that the police had an independent, untainted source for the information leading to the contested evidence, or that the evidence would have been inevitably discovered through routine police investigation, an exception to the general rule of exclusion exists. *Nix v. Williams*, 467 U.S. 431, 435-45, 104 S. Ct. 2501, 2508-10 (1984).

The trial court's erroneous decision to admit the Appellant's statement improvidently pretermitted findings of fact relevant to the determination of whether the State could show either that the police had an independent, untainted source for the information leading to the contested evidence or that the evidence would have been inevitably discovered through routine police investigation. The record reveals that the Appellant had been implicated in the crime by two of his co-defendants. The nature of this information may have been sufficient to establish probable cause for a search warrant of the Appellant's residence and, thus, the gun may have been discovered through routine police investigation. However, the record is not sufficient to make this determination. This court does not possess fact finding authority; our jurisdiction being appellate only. Tenn. Code Ann. § 16-5-108

(1994). Thus, our review is precluded by the absence of these critical findings, and this determination must be made by the trial court upon remand.

## CONCLUSION

For the foregoing reasons, we conclude that the trial court erred by failing to suppress the Appellant's incriminating statement to the police. Accordingly, the Appellant's conviction for especially aggravated robbery is reversed and remanded for a new trial. Nonetheless, the admissibility of the victim's gun, upon remand, is subject to the trial court's determination of whether the gun was discoverable through an independent, untainted source or through routine police investigation.

                    _____
                    DAVID G. HAYES, JUDGE