IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 19, 2019 Session

**STATE OF TENNESSEE v. EARLY REYNOLDS**

**Appeal from the Circuit Court for Maury County**
**No. 25527     Stella L. Hargrove, Judge**

_____

**No. M2018-00988-CCA-R3-CD**

_____

A Maury County jury convicted the Defendant, Early Reynolds, of unlawful possession of a firearm after a prior felony conviction involving use, or attempted use, of force, violence, or a deadly weapon. The trial court sentenced the Defendant as a career offender to serve fifteen years in the Tennessee Department of Correction. On appeal, the Defendant asserts that: (1) the trial court erred when it denied his motion to suppress statements made to the police after he invoked his right to remain silent; (2) the trial court improperly admitted a photograph of the Defendant holding a gun; and (3) the evidence is insufficient to support his conviction. After review, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. ROSS DYER, JJ., joined.

Brandon E. White, Columbia, Tennessee, for the appellant, Early Reynolds.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Brent A. Cooper, District Attorney General; and S. Scott Speer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises out of the Defendant's charges for aggravated domestic assault and violation of an order of protection after he made repeated phone calls to his ex-girlfriend, Alvanette Caldwell, and sent her a text message with a photograph of him holding a revolver. At the time of his arrest, the Defendant gave consent for the police to search his residence and officers found a revolver wrapped in a rag near a storage shed. Consequently, a Maury County grand jury indicted the Defendant for unlawful

possession of a firearm after a previous conviction for a felony involving force, violence, or a deadly weapon. The Defendant filed a motion to suppress his statement to police and a motion to exclude the photograph of him holding the revolver. After both motions were heard and denied, the case proceeded to trial.

## A. Pretrial Motions
## 1. Motion to Suppress Statements

At the suppression hearing, the Defendant argued that Sergeant Michael Kash, Columbia Police Department officer, failed to honor his right to remain silent by proceeding with the interview after the Defendant requested that the interview stop. He further claimed that Sergeant Kash threatened him by telling him that he would report to the district attorney his lack of candor and dishonesty during the interview. The State responded that Sergeant Kash was honest with the Defendant about the procedures he followed and that the Defendant did not unequivocally terminate the interview.

A recording of the interview is included in the record on appeal. Our review of the interview is summarized as follows: Sergeant Kash entered the interview room and reviewed *Miranda* with the Defendant. He then confirmed the Defendant's cell phone number with him and asked if law enforcement could retrieve information from the cell phone. The Defendant declined to allow law enforcement to conduct a "dump" of the information on the phone, and Sergeant Kash told him that he would seek a search warrant for the phone. The Defendant then gave consent for a search of the phone.

Initially, the Defendant denied calling Ms. Caldwell, asserting that she had called him. As Sergeant Kash and the Defendant talked, the Defendant admitted to calling Ms. Caldwell. The Defendant denied being at Ms. Caldwell's home on two separate days and further denied sending her a photograph via text message. Sergeant Kash began questioning some of the Defendant's responses as inconsistent with the police report. Sergeant Kash stated, "I didn't have to bring you here, you could have been arrested." In response, the Defendant stood up and said, "Come on, arrest me!" and "Take me to jail." As the Defendant made these statements, Sergeant Kash continued talking over the Defendant about the police report and how he was trying to give the Defendant an opportunity to tell his side of the story. The Defendant stated, "I'm through talking," but sat down in the interview room chair. He then said, "You know what? It's not going to help the judge with nothing." Sergeant Kash responded that the district attorney received copies of the interviews and that Sergeant Kash included information about whether an interviewee was cooperative or lying. The Defendant expressed his belief that he would receive jail time "anyway."

The Defendant then returned to the topic of the photograph and asked Sergeant Kash, "She showed the officer the picture of me?" Sergeant Kash confirmed that Ms. Caldwell had shown the photograph to an officer, and the Defendant inquired why his probation officer had not mentioned it to him when they met the day before. Sergeant Kash explained that the probation officer likely did not have the police report at the time the Defendant met with the probation officer.

The Defendant admitted sending the picture to Ms. Caldwell and, after some discussion, admitted that he owned and had fired the revolver. He stated that he bought the revolver "a day ago."

On the morning of trial[1], the trial court heard additional testimony from Sergeant Kash about his interview with the Defendant. Sergeant Kash testified that he recalled talking with the Defendant about the fact that Sergeant Kash did not believe the Defendant was being forthcoming and the Defendant's response that Sergeant Kash should "take [him] to jail." Sergeant Kash recalled that he and the Defendant were talking over each other at the time but that he believed the Defendant made statements about arresting him or taking him to jail "a few times." Sergeant Kash stated that he did not recall the Defendant saying, "I'm through talking." He agreed that he had reviewed the video recording and heard the Defendant make the statement during the review but, at the time of the interview, both men were speaking loudly and over one another so that he did not hear the statement.

Sergeant Kash testified that during his eleven years as a detective, if a suspect stated they wanted a lawyer or did not want to talk, he ceased all questioning. Sergeant Kash explained, "[I]f somebody says, 'Take me to jail,' but continues to talk to me, they're telling me they really don't want to go to jail. They're just saying that they want to talk to me, as [the Defendant] did that day." About his statement to the Defendant that he would provide information to the district attorney about his interaction with the Defendant, Sergeant Kash said that he advised all interviewees that he always conveyed to the district attorney the interviewee's demeanor during the interview. Sergeant Kash denied that he used this practice as "a tool to threaten anybody." He clarified that he never advised the district attorney about what punishment to seek but only included information about the interview. He stated that he would answer any questions a prosecutor may have but that how the State proceeded on any given case was at the district attorney's discretion.

---

[1] According to the Defendant's brief, after the January 8, 2018 suppression hearing but before the January 10, 2018 trial, the Defendant's attorney requested that he be allowed to supplement the record with testimony from Sergeant Kash about whether Sergeant Kash had heard Mr. Reynolds's statement terminating the interrogation. The trial court agreed; thus there was additional evidence presented after the trial court's denial of the motion to suppress on January 8, 2018.

Sergeant Kash summarized the interaction with the Defendant, explaining that he was attempting to convey to the Defendant that he wanted to hear the Defendant's "side of the story," and the Defendant responded that he did not think it would "matter." The Defendant then initiated the discussion about the photograph of him holding a gun.

On cross-examination, Sergeant Kash testified that, when an interviewee invoked a right, he had never failed to honor their invocation of the right to counsel or to remain silent. Sergeant Kash reiterated that he did not hear the Defendant's statement about being "done talking" during the interview. Sergeant Kash stated that the Defendant took no actions consistent with a statement that he no longer wished to speak to Sergeant Kash but resumed the conversation about the victim's allegations.

The trial court denied the Defendant's motion to suppress. In so doing, it noted the Defendant's criminal history and his familiarity with the criminal justice system and police interviews. The trial court identified various acts of compliance during the interview that indicated that the Defendant "knows how to do this." The parties then played excerpts from the recording for the trial court. The trial court agreed that the Defendant stated that he was "done talking"; however, the trial court observed that the Defendant then sat back down without being told to do so. The trial court stated, "[I]t's a pretty equivocal situation when he says 'I'm through,' and yet he sits down and continues to ask really the next pertinent question himself." The trial court concluded:

It's not unequivocal. He doesn't - - he doesn't really stop the interview."

He is no stranger to interviews in the criminal justice system. He sits back down immediately. The officer makes no advancements or movements towards him. He is calm. And then we know what happens next with those two issues and then the question on the part of [the Defendant]."

### 2. Motion to Exclude Photograph

The Defendant asserted that the photograph of him holding a revolver should be excluded based on relevance and lack of authentication. The photograph was obtained when an officer spoke with the victim about the alleged aggravated assault and violation of an order of protection. The victim showed the officer a photograph on her cell phone that she alleged the Defendant sent to her via text message. The photograph depicted the Defendant holding a revolver. The text message was sent December 11, 2016, but the photograph itself only showed the date of December 11 with no indication of the year. The Defendant argued that the photograph could have been taken outside the four-year

statute of limitations for this offense and thus should be excluded from evidence due to insufficient authentication. The State responded that the photograph was relevant to show the Defendant in possession of the same revolver found at his residence. The State asserted that it would introduce the gun and officer testimony for authentication.

Upon further questioning by the trial court, the State elaborated on the proof it intended to present at trial. The State planned to introduce the gun, the photograph of the Defendant holding the gun, and excerpts from the recorded interview that included the Defendant identifying himself and the gun in the photograph, while also admitting ownership of the gun and admitting he had purchased the gun the day before. The trial court denied the Defendant's motion, finding that the photograph was relevant to the issue of possession and that the Defendant's statements to the police provided a sufficient timeline for the Defendant's possession of the gun. The trial courtalso concluded that the probative value of the photograph was not substantially outweighed by the danger of unfair prejudice. [2]

## B. Trial

Ryan Webb, a Columbia Police Department ("CPD") officer, testified that, on December 14, 2016, he investigated an incident that occurred on Stonebridge Way in Columbia, Tennessee. During the course of the investigation, he reviewed "a number of text messages." More specifically, one of the text messages contained a photograph of an individual that Officer Webb recognized as the Defendant. Officer Webb drafted a report of the victim's complaint against the Defendant and attached the photograph from the text message of the Defendant holding a revolver. The report also included the cell phone number associated with the photograph. Officer Webb identified the photograph of the Defendant that the victim showed him. Officer Webb confirmed that, after submitting his police report, the case was assigned to a detective for further investigation.

On cross-examination, Officer Webb agreed that the photograph was dated "December 11," the same day it was sent but that the photograph date did not display a year. Officer Webb further agreed that he had no personal knowledge of when the photograph of the Defendant holding the revolver was taken.

Matt Thomas, a State of Tennessee law enforcement officer, testified that he participated in a search of the Defendant's residence on December 15, 2016. When he arrived at the residence with other law enforcement officers, he observed the Defendant walk out into the front yard from the back of the house. The Defendant provided consent

---

[2] On the day of trial, before the jury was selected, the trial court added this finding to the prior ruling to deny the motion to exclude the photograph of the gun.

for a search of his property, and the officers spread out to search the house while the Defendant sat on a couch in the living room. After five to ten minutes of searching inside the house, Officer Thomas exited the house through the back door to search a shed in the backyard. Next to the shed was a riding lawnmower that was covered with a tarp.

Officer Thomas testified that the shed was elevated, so he lowered himself to the ground to look underneath the shed. While on the ground, he noticed a blue rag lying underneath the riding lawnmower. Officer Thomas testified that he retrieved the blue rag from underneath the lawnmower and found a loaded revolver wrapped inside the rag. He confirmed that the Defendant's yard was not fenced.

Brian Stoker, a CPD detective, testified that he was reviewing a case assigned to him and noticed that the case included information about a photograph of the Defendant holding a firearm. Detective Stoker was familiar with the Defendant and believed that the Defendant had a felony conviction. Detective Stoker reported this information to Sergeant Kash and then Detective Ervin. As a result, Detective Stoker and other officers went to the Defendant's residence.

Detective Stoker testified that, when he arrived at the residence, he observed the Defendant walking from the left back side of the house to the front to meet the officers. Detective Stoker confirmed that he heard the Defendant consent to a search of his property. After searching inside the residence, Detective Stoker and several other officers searched the backyard. After a few minutes, Officer Thomas summoned Detective Stoker to a lawnmower located next to the shed and showed him a revolver wrapped in a "blue thing." Detective Stoker notified his supervisor, Sergeant Kash. Upon further inspection, Detective Stoker observed that the revolver could hold nine bullets but that there were only eight live rounds and one spent casing inside the cylinder.

Allan Ervin, a CPD detective, testified about the December 15, 2016 search of the Defendant's residence. He recalled that the Defendant met the officers in front of the residence when they arrived and that the Defendant provided consent to a search of his property. Detective Ervin stayed in the living room area with the Defendant while the other officers conducted the search. At some point, Detective Stoker informed Sergeant Kash "there was something outside." Sergeant Kash asked Detective Ervin to retrieve his camera and photograph a revolver found near a shed. Detective Ervin identified photographs of the area where the revolver was found and the revolver.

Detective Ervin testified that, at a later time, Sergeant Kash asked him to return to the Defendant's residence for the purpose of confirming whether there was a "gunshot through the window, rear of the residence." Detective Ervin observed what appeared to be a bullet hole through the lower half of one of the windows. He also observed some

damage to a tree, approximately three or four feet from the window, consistent with damage caused by a bullet.

Detective Ervin testified that a week before the trial, the district attorney's Office contacted him and requested that he take the revolver recovered from the Defendant's property and confirm whether it was operational. Detective Ervin and Sergeant Kash took the revolver to the gun range and fired a round from the revolver.

Sergeant Kash testified that he assigned Detective Stoker a case involving the Defendant. In the case file was a photograph of the Defendant holding a revolver. Detective Stoker provided Sergeant Kash with some additional information regarding the Defendant and, as a result, Detective Ervin, Detective Stoker, Officer Thomas, and Officer Stone went to the Defendant's residence in Columbia, Tennessee. With the Defendant's permission, the officers searched the property and found a revolver wrapped in a blue rag. The Defendant was transported to the police department where Sergeant Kash interviewed him.

Sergeant Kash testified that the interview was approximately an hour and a half long and that the Defendant initially denied that he was the man holding the revolver in the photograph. Ultimately, however, he admitted sending the photograph of himself holding the revolver. The Defendant also claimed ownership of the gun and disclosed that he had fired the gun. The State played relevant portions of the recorded interview for the jury. Sergeant Kash agreed that during the interview, the Defendant first claimed that he fired the gun in a creek at a squirrel but then admitted firing the gun through a window of his house. The Defendant told Sergeant Kash, "Go out and look at [his] window." Sergeant Kash sent Detective Ervin to confirm the Defendant's story.

Sergeant Kash testified that, during the interview, the Defendant admitted that he bought the revolver the previous day "on the street." He further admitted that he put the gun in the backyard by the lawnmower. Sergeant Kash recalled that he also confirmed the Defendant's cell phone number with him during the interview. The cell phone number the Defendant identified as his own was the same cell phone number displayed on the text message containing the photograph of the Defendant holding the revolver.

The Defendant stipulated that on May 12, 2015, he was convicted of a felony involving the use or attempted use of force, violence, or a deadly weapon, which was the required predicate conviction pursuant to Tennessee Code Annotated section 39-17-1307(b)(1)(A).

Based upon this evidence, the jury convicted the Defendant of unlawful possession of a firearm after a prior felony conviction involving the use or attempted use of force,

violence, or a deadly weapon. The trial court sentenced the Defendant as a career offender to serve fifteen years in the Tennessee Department of Correction. It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that: (1) the trial court erred when it denied his motion to suppress statements made to the police after he invoked his right to remain silent; (2) the trial court improperly admitted a photograph of the Defendant holding a gun; and (3) the evidence is insufficient to support his conviction.

### A. Motion to Suppress Statements

The Defendant asserts that the trial court erred when it denied his motion to suppress his statements during a police interview. He argues that his invocation of his right to remain silent was not equivocal and that the evidence preponderates against the trial court's finding that Sergeant Kash's testimony was credible. The State responds that the Defendant did not make an unequivocal request to stop the interview; therefore, the trial court properly denied the motion. We agree with the State.

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews *de novo* the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23. In reviewing a trial court's ruling on a motion to suppress, an appellate court may consider the evidence presented both at the suppression hearing and at the subsequent trial. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

The privilege against self-incrimination guaranteed by both the Fifth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution, affords criminal defendants the right to remain silent. *State v. Climer*, 400 S.W.3d 537, 556-57 (Tenn. 2013); *State v. Blackstock*, 19 S.W.3d 200, 207 (Tenn. 2000); *State v.*

*Crump*, 834 S.W.2d 265, 268 (Tenn. 1992). An accused who wishes to rely on the constitutional right to remain silent, however, must unambiguously invoke it. *Berghuis v. Thompkins*, 560 U.S. 370 (holding that the defendant's prolonged silence in the face of police questioning did not amount to an unambiguous invocation of the right to remain silent). A court must determine from an objective viewpoint whether "a responsible police officer in the circumstances would understand the statement to be a request [to remain silent]." *Id.* at 381.

Before the police must scrupulously honor a suspect's right to remain silent, the suspect must clearly articulate that right so that a reasonable police officer under the circumstances would understand the suspect's words and conduct to mean that the suspect wants to exercise his right to cut off further questioning. *See State v. John E. Turner*, No. M2002-02454-CCA-R3-CD, 2003 WL 22970970, at *2 (Tenn. Crim. App. Dec. 18, 2003) (citing *State v. William M. Hukowicz*, No. M1999-00073-CCA-R9-CD, 2000 WL 1246430, at *2 (Tenn. Crim. App., at Nashville, Aug. 18, 2000), *no perm. app. filed*). This requirement prevents law enforcement officers from having to make "difficult decisions about an accused's unclear intent and face the consequence of suppression 'if they guess wrong.'" *Berghuis*, 560 U.S. at 382 (quoting *Davis v. United States*, 512 U.S. 452, 459 (1994).

At the motion for new trial hearing, the trial court denied the motion and made the specific finding that it found "Sergeant Kash 100 percent credible as a witness." Sergeant Kash testified that he did not hear the Defendant say, "I'm done talking." The evidence does not preponderate against the trial court's findings in this respect. The recording of the interview showed the two men talking loudly over one another. Much of what was being said by both men is difficult to hear. The Defendant, of his own choosing, sat down immediately following saying, "I'm through talking," and continued to engage in a conversation with Sergeant Kash. Moreover, it was the Defendant who initiated further discussion about the photograph. The Defendant's words and conduct did not clearly articulate a desire to cut off further questioning. The Defendant is not entitled to relief as to this issue.

## B. Motion to Exclude Photograph

The Defendant asserts that the trial court abused its discretion when it admitted into evidence the photograph depicting the Defendant holding a revolver because the photograph was unfairly prejudicial and was undated. The State responds that the trial court properly admitted the photograph because it was relevant and corroborated the Defendant's admissions to Sergeant Kash. We agree with the State.

In Tennessee, admissibility of evidence is within the sound discretion of the trial judge. *State v. Saylor*, 117 S.W.3d 239, 247 (Tenn. 2003). A photograph is admissible if it is relevant to an issue in dispute and if its probative value is not substantially outweighed by its prejudicial effect. Tenn. R. Evid. 403. The determination of whether proffered evidence is relevant in accordance with Tennessee Rule of Evidence 401 is left to the sound discretion of the trial judge, as is the determination of whether the probative value of evidence is substantially outweighed by the possibility of prejudice pursuant to Tennessee Rule of Evidence 403. *State v. Kennedy*, 7 S.W.3d 58, 68 (Tenn. Crim. App. 1999) (citing *State v. Forbes*, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995)); *State v. Burlison*, 868 S.W.2d 713, 720-21 (Tenn. Crim. App. 1993). In making these decisions, the trial court must consider the questions of fact that the jury will have to consider in determining the accused's guilt, as well as other evidence that has been introduced during the course of the trial. *State v. Williamson*, 919 S.W.2d 69, 78 (Tenn. Crim. App. 1995). We will only disturb an evidentiary ruling on appeal when it appears that the trial judge arbitrarily exercised his discretion. *State v. Baker*, 785 S.W.2d 132, 134 (Tenn. Crim. App. 1989).

Initial questions of admissibility of evidence are governed by Tennessee Rules of Evidence 401 and 403. These rules require that the trial court must first determine whether the proffered evidence is relevant. Pursuant to Rule 401, evidence is deemed relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." *See Forbes*, 918 S.W.2d at 449. In other words, "evidence is relevant if it helps the trier of fact resolve an issue of fact." NEIL P. COHEN, ET AL., TENNESSEE LAW OF EVIDENCE § 4.01[4], at 4-8 (4th ed.2000). After the trial court finds that the proffered evidence is relevant, it then weighs the probative value of that evidence against the risk that the evidence will unfairly prejudice the trial. *State v. James*, 81 S.W.3d 751, 757 (Tenn. 2002). If the court finds that the probative value is substantially outweighed by its prejudicial effect, the evidence may be excluded. Tenn. R. Evid. 403. "'Excluding relevant evidence under this rule is an extraordinary remedy that should be used sparingly and persons seeking to exclude otherwise admissible and relevant evidence have a significant burden of persuasion.'" *James*, 81 S.W.3d at 757-58 (quoting *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 227 (Tenn. Ct. App. 1999)).

To be admissible, a photograph must be relevant to some issue at trial and the danger of unfair prejudice, confusion of the issues, or misleading the jury must not substantially outweigh its probative value. Tenn. R. Evid. 403; *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978); *State v. Gallaher*, No. E2001-01876-CCA-R3-CD, 2003 WL 21463017, at *2 (Tenn. Crim. App., at Knoxville, June 25, 2003). Before any photograph can be admitted into evidence it must be verified and authenticated by a witness with knowledge of the facts. *Banks*, 564 S.W.2d at 949-50. In *Banks*, our

supreme court gave the trial courts guidance for determining the admissibility of relevant photographic evidence. As relevant to this case, the trial court should consider: the accuracy and clarity of the picture and its value as evidence; the adequacy of testimonial evidence in relating the facts to the jury; and the need for the evidence to establish a prima facie case of guilt or to rebut the defendant's contentions. *Id*.

In our view, the trial court did not abuse its discretion when it admitted the photograph. A proper foundation was laid when the officer testified that the photograph was a fair and accurate representation of a photograph sent to the victim from the Defendant's cell phone on December 11, 2016. Additionally, the Defendant admitted that the revolver in the photograph was the same revolver that police recovered from his home and that he had purchased the revolver "the day before." Finally, the Defendant admitted that he texted the photograph to the victim on December 11, 2016. Although the Defendant stated to Sergeant Kash that he had bought the gun "the day before," which would have been after December 11, 2016, the evidence related to the gun, when considered cumulatively, indicates that the revolver was a recent acquisition and, therefore, relevant to the question of the Defendant's possession of a gun at the time of these incidents.

As to its probative value, the photograph was probative in multiple ways: to show the Defendant's actual possession of the gun; to show the similarities between the gun in the photograph and the gun recovered under the lawn mower in the Defendant's back yard; and to corroborate the Defendant's testimony about his ownership, use of, and control over the gun. This probative value of the photograph was not substantially outweighed by any prejudice to the Defendant. Therefore, the Defendant is not entitled to relief as to this issue.

## C. Sufficiency of the Evidence

The Defendant asserts that the evidence is insufficient to support his conviction for unlawfully possessing a firearm after a previous conviction for a felony involving force, violence, or a deadly weapon. He argues that, if this Court agrees about the improper admission of his statement and the photograph, the evidence is insufficient; however, since we did not conclude that the statement and photograph were improperly admitted, we consider his alternative argument that a reasonable jury could not infer constructive possession of the revolver because the State failed to prove that the revolver was found on his property. The State responds that the Defendant's statement established that he exerted both actual and constructive possession of the revolver prior to his arrest. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

The Defendant was convicted of violating Tennessee Code Annotated section 39-17-1307(b)(1)(A), which provides that a person commits an offense "who unlawfully possesses a firearm" and "[h]as been convicted of a felony involving the use or attempted use of force, violence, or a deadly weapon."

Possession of a firearm may be actual or constructive. *State v. Fayne*, 451 S.W.3d 362, 374 (Tenn. 2014). Actual possession "refers to physical control over an item." *Id.* at 370. On the other hand, constructive possession is established when a person has "'the power and intention at a given time to exercise dominion and control over [a firearm] either directly or through others.'" *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001) (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). Constructive possession has also been defined as "'the ability to reduce an object to actual possession.'" *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (quoting *United States v. Martinez*, 588 F.2d 495, 498 (5th Cir. 1979)). Constructive possession depends on the totality of the circumstances in each case and may be established through circumstantial evidence. *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (citing T.C.A. § 39-17-419).

The evidence, viewed in the light most favorable to the State, shows that the Defendant, a convicted felon, admitted to buying a revolver and then photographing himself holding the revolver and sending it to his ex-girlfriend. He also admitted firing the revolver through a window of his house and placing the revolver under the lawn mower in his back yard. The Defendant's extrajudicial statements require corroboration. *See State v. Bishop*, 431 S.W.3d 22, 58 (Tenn. 2014). These statements are corroborated by the Defendant's cell phone number displayed on the text with the photograph sent to the ex-girlfriend's cell phone; the hole in a window at the Defendant's residence; and law enforcement's discovery of a revolver under the lawn mower in the Defendant's back yard. Based upon this evidence, we conclude that a rational jury could find the Defendant guilty beyond a reasonable doubt of unlawful possession of the revolver. The Defendant stipulated that he had previously been convicted of a predicate felony. The Defendant is not entitled to relief as to this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE